UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 25-193 (KMM/JFD)
Criminal No. 25-194(4) (KMM/JFD)

UNITED STATES OF AMERICA,

    Plaintiff,      **PLEA AGREEMENT AND**
               **SENTENCING**
 v.            **STIPULATIONS**

ABRAHAM VICTOR,
 a/k/a "Macco,"

    Defendant.

The United States of America and the defendant, Abraham Victor, agree to resolve this case on the terms and conditions that follow. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota ("the United States" or "the Government"). This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. As to Crim. No. 25-193 (KMM/JFD), the defendant agrees to plead guilty to Counts 1 and 3 of the Indictment, both of which charge the defendant with Post Office Burglary, in violation of 18 U.S.C. § 2115. The defendant fully understands the nature and elements of the crime with which he has been charged.

As to Crim. No. 25-194 (KMM/JFD), the defendant agrees to plead guilty to Count 1 of the Indictment, which charges the defendant with Conspiracy to

1

Commit Bank Fraud, in violation of 18 U.S.C. § 1349. The defendant fully understands the nature and elements of the crime with which he has been charged.

Upon imposition of sentence, the government agrees to move to dismiss those remaining charges against the defendant contained in the respective Indictments for Crim. No. 25-193 (KMM/JFD) and Crim. No. 25-194 (KMM/JFD).

2.    **Factual Basis**. The defendant is pleading guilty because he is in fact guilty of Counts 1 and 3 of the Indictment in Crim. No. 25-193 (KMM/JFD) and Count 1 of the Indictment in Crim. No. 25-194 (KMM/JFD). In pleading guilty, the defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to the United States Sentencing Guidelines:

On or about May 29, 2020, in the State and District of Minnesota, the defendant twice burglarized a U.S. Post Office facility. In the early morning hours, Mr. Victor and two other men broke into the U.S. Post Office facility known as the Powderhorn Station in Minneapolis, Minnesota. Mr. Victor and his accomplices smashed through the glass doors, hopped the service counter, and then rifled through approximately 40 packages on the workroom floor.

Approximately 20 hours later, Mr. Victor returned to the Powderhorn Station and did it again. Mr. Victor broke into the building, accessed the

2

workroom floor, and then rifled through and stole packages. The total known losses have been calculated at $8,028.40.

Mr. Victor stipulates that he committed the above-described acts willfully and knew that his conduct violated the law.

Additionally, from in or about April 2019 through in or about January 2024, in the State and District of Minnesota, members and associates of the Low-end gangs (the "Lows"), a Minneapolis-based street gang, engaged in a multi-faceted bank fraud scheme that involved creating and depositing fraudulent checks and then withdrawing those fraud proceeds to enrich themselves and further the activities of the Lows gang. Mr. Victor, knowing the object and purpose of the scheme, willingly participated in that scheme.

Specifically, Mr. Victor and other conspirators used social media to recruit individuals (i.e., "money mules") with existing bank accounts at various financial institutions, including Wells Fargo, JP Morgan Chase, Bank of America, to provide their personal banking information for use in the check fraud scheme. Mr. Victor and his co-conspirators then created the false checks, which were made out to those money mules. The false checks were deposited into the money mules' accounts, and the funds quickly withdrawn and provided to Mr. Victor and his co-conspirators. In total, Mr. Victor and his co-conspirators coordinated the deposit of at least 28 fraudulent checks and attempted to withdraw more than $175,000.

3

In the course of their scheme, which included the above and similar tactics, Mr. Victor and his co-conspirators attempted to unlawfully withdraw nearly $72,000. The intended loss from the scheme, however, was approximately $217,000.

3. **Waiver of Pretrial Motions**. The defendant understands and agrees that the defendant has certain rights to file pre-trial motions. As part of this plea agreement, and based upon the concessions of the United States within this plea agreement, the defendant knowingly, willingly, and voluntarily gives up the right to have any pending motions resolved and to file any additional pre-trial motions in this case. The defendant agrees that, by pleading guilty, he is withdrawing any motions previously filed.

4. **Waiver of Constitutional Trial Rights**. The defendant understands that he has the right to go to trial. At trial, the defendant would be presumed innocent, have the right to trial by jury or, with the consent of the United States and of the Court, to trial by the Court, the right to the assistance of counsel, the right to confront and cross-examine adverse witnesses, the right to subpoena witnesses to testify for the defense, the right to testify and present evidence, and the right to be protected from compelled self-incrimination. The defendant understands that he has the right to an attorney at every stage of these proceedings and, if necessary, one will be appointed to represent him. The defendant understands that he has the right to persist in a plea of not

4

guilty and, if he does so, he would have the right to a public and speedy trial. By pleading guilty, the defendant knowingly, willingly, and voluntarily waives each of these trial rights, except the right to counsel. The defendant understands that a guilty plea is a complete and final admission of guilt and, if the Court accepts the guilty plea, the Court will adjudge the defendant guilty without a trial.

5.    **Additional Consequences.** The defendant understands that as a result of this conviction, the defendant could experience additional collateral consequences, such as the loss of the right to carry firearms, the right to vote, and the right to hold public office. If the defendant is not a United States citizen, as a result of a plea of guilty, the defendant may be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant has discussed with his attorney the punishments and consequences of pleading guilty, understands that not all of the consequences can be predicted or foreseen, and still wants to plead guilty in this case.

6.    **Statutory Penalties: Crim. No. 25-193 (KMM/JFD).** The defendant understands that Counts 1 and 3 of the Indictment, charging Post Office Burglary in violation of 18 U.S.C. § 2115, are felony offenses that carry the following statutory penalties:

a.    a maximum of five (5) years in prison;

5

b.    a supervised release term of up to one (1) year;

c.    a fine of up to $250,000, or twice the gross gain or loss, whichever is greatest;

d.    restitution to victims as agreed to by the parties in this agreement and any mandatory restitution as provided for in this agreement; and

e.    a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

7.    **Statutory Penalties: Crim. No. 25-194 (KMM/JFD).** The defendant understands that Count 1 of the Indictment, charging Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349, is a felony offense that carries the following statutory penalties:

a.    a maximum of 30 years in prison;

b.    a supervised release term of up to three years;

c.    a fine of up to $1,000,000, or twice the gross gain or loss, whichever is greatest;

d.    restitution to victims as agreed to by the parties in this agreement and any mandatory restitution as provided for in this agreement; and

e.    a mandatory special assessment of $100 under 18 U.S.C. § 3013(a)(2)(A).

8.    **Guidelines Calculations.** The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, *et seq.* Nothing in this plea agreement should be construed to limit the parties from presenting any and all relevant evidence to the Court at sentencing. The

6

parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. The parties stipulate to the following guidelines calculations:

a.    Crim. No. 25-193 (KMM/JFD)

    i)    Base Offense Level. The parties agree that the base offense level is **12**. U.S.S.G. § 2B2.1(a)(2).

    ii)    Specific Offense Characteristics. The parties agree that the offense level should be **increased by one level** because the offense involved the loss of more than $5,000 but less than $20,000. U.S.S.G. § 2B2.1(a)(2). The parties agree that no other specific offense characteristics apply.

    iii)    Chapter 3 Adjustments. The parties agree that, other than the adjustments for multiple counts and acceptance of responsibility, no Chapter 3 adjustments apply.

b.    Crim. No. 25-194 (KMM/JFD)

    i)    Base Offense Level. The parties agree that the base offense level is **7**. U.S.S.G. § 2B1.1(a)(1).

    ii)    Specific Offense Characteristics. The parties agree that the offense level should be **increased by 10 levels** because the offense involved an intended loss of more than $150,000 but less than $250,000. U.S.S.G. § 2B1.1(b)(1)(F). The parties agree that no other specific offense characteristics apply.

    iii)    Chapter 3 Adjustments. The parties agree that, other than the adjustments for multiple counts and acceptance of responsibility, no Chapter 3 adjustments apply.

c.    Grouping. Because the offenses do not involve substantially the same harm, they offenses cannot be grouped pursuant to

7

U.S.S.G. § 3D1.2. The combined offense level is therefore determined by the multiple count adjustment under U.S.S.G. § 3D1.4. The highest subtotal offense level of the two counts is 17 (Crim. No. 25-194). Because the other subtotal offense level is 13 (Crim. No. 25-193), which is one to four levels less serious than 17, each count is assigned one unit for a total of two units. U.S.S.G. §3D1.4(a). The existence of two units results in a **two-level increase to the highest subtotal offense level of 17**. U.S.S.G. §3D1.4.

d.    Acceptance of Responsibility. The government agrees to recommend that the defendant receive a **two-level reduction** for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). As the defendant has timely notified the government of the defendant's intention to enter a plea of guilty, the government agrees to recommend that the defendant receive an additional **one-level reduction** pursuant to U.S.S.G. § 3E1.1(b). Whether these reductions will be imposed shall be determined by the Court in its discretion. However, the defendant understands and agrees that the government's recommendations are conditioned upon the following: (1) the defendant testifies truthfully during the change of plea and sentencing hearings; (2) the defendant provides full, complete and truthful information to the United States Probation Office in the pre-sentence investigation; and (3) the defendant engages in no conduct inconsistent with acceptance of responsibility before the time of sentencing.

Nothing in this agreement limits the right of the government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an adjustment for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility.

e.    Criminal History Category. The parties believe that, at the time of sentencing, the defendant will fall into Criminal History Category **II**. U.S.S.G. § 4A1.1. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. The defendant's actual

8

criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The defendant understands that if the presentence investigation reveals any prior adult or juvenile sentence which should be included within his criminal history under the U.S. Sentencing Guidelines, the defendant will be sentenced based on his true criminal history category, and he will not be permitted to withdraw from this Plea Agreement. U.S.S.G. § 4A1.1.

    f.    <u>Guidelines Range</u>. If the adjusted offense level is **16** and the criminal history category is **II**, the recommended Sentencing Guidelines range is **24 to 30 months**.

    g.    <u>Fine Range</u>. The Sentencing Guidelines fine range is $10,000 to $95,000. USSG § 5E1.2(c).

    h.    <u>Supervised Release</u>. The Sentencing Guidelines' term of supervised release is up to 3 years. U.S.S.G. § 5D1.2

9.    **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* U.S.S.G. §§ 7B1.3, 7B1.4. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9

10.    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and that their application is a matter that falls solely within the Court's discretion. The Court will make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also vary and/or depart from the applicable Guidelines range. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

11.    **Agreements as to Sentencing Recommendation**. The parties are free to recommend whatever sentence they deem appropriate. The parties reserve the right to make motions for departures under the Sentencing Guidelines or for variances pursuant to 18 U.S.C. § 3553(a) and to oppose any such motions made by the opposing party. If the Court does not accept the sentencing recommendation of the parties, the defendant will have no right to withdraw his guilty plea. Notwithstanding the reservations above, the government agrees to seek a sentence of no more than **24 months** in prison.

12.    **Special Assessments**. The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which the

defendant is convicted, pursuant to U.S.S.G. § 5E1.3. The defendant agrees to pay the special assessment.

13. **Restitution Agreement.** The defendant is required to pay mandatory restitution to victims and in an amount to be determined by the Court. He agrees to pay the amount to the victims as determined at sentencing. He further agrees that (a) as to Crim. No. 25-193 (KMM/JFD), he is obligated to pay $8,028.40; and (b) as to Crim. No. 25-194 (KMM/JFD), he is obligated to pay $71,957.

14. **Disclosure of Assets.** The defendant will fully and completely disclose to the United States Attorney's Office the existence and location of any assets in which the defendant has any right, title, or interest, or over which the defendant exercises control, directly or indirectly, including those assets held by a spouse, nominee or other third party, or any business owned or controlled by the defendant. The defendant agrees to assist the United States in identifying, locating, returning, and transferring assets for use in payment of restitution, fines, and forfeiture ordered by the Court. The defendant agrees to complete a financial statement within two weeks of the entry of his guilty plea. The defendant further agrees to execute any releases that may be necessary for the United States to obtain information concerning the defendant's assets and expressly authorizes the United States to obtain a credit report on the defendant to evaluate the defendant's ability to satisfy

11

financial obligations imposed by the Court. If requested by the United States, the defendant agrees to submit to one or more asset interviews or depositions under oath.

15. **Forfeiture**. The defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(2), any property constituting, or derived from, proceeds the person obtained directly or indirectly, as the result of such violation; and, pursuant to 18 U.S.C. § 1028(b), any personal property used or intended to be used to commit the offense.

16. **Waivers of Appeal and Collateral Attack**. The defendant hereby waives the right to appeal any non-jurisdictional issues. This appeal waiver includes but is not limited to the defendant's waiver of the right to appeal guilt or innocence, any issues relating to the change-of-plea proceedings, the sentence imposed, the Guidelines calculations, any restitution obligations, and the constitutionality of the statutes to which the defendant is pleading guilty. The parties agree, however, that excluded from this waiver is an appeal by defendant of the substantive reasonableness of a term of imprisonment above **24 months' imprisonment**.

The defendant also waives the right to collaterally attack his conviction and sentence under 28 U.S.C. § 2255 except based upon a claim of ineffective assistance of counsel. Further, this collateral-review waiver does not operate to waive a collateral challenge under 28 U.S.C. § 2255 based on new legal

12

principles enunciated in Supreme Court case law decided after the date of this Plea Agreement that are both substantive and have retroactive effect. For purposes of this provision, legal principles that are substantive and retroactive are those that narrow the reach of the offense of conviction and render the defendant's conduct non-criminal or that render the sentence imposed illegal.

The defendant has discussed these rights with the defendant's attorney. The defendant understands the rights being waived, and the defendant waives these rights knowingly, intelligently, and voluntarily.

The United States agrees to waive its right to appeal any sentence except the government may appeal the substantive reasonableness of a term of imprisonment below **24 months' imprisonment**.

17. **FOIA Requests.** The defendant waives all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

18. **Complete Agreement.** This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant. By signing this plea agreement, the defendant acknowledges: (a) that the defendant has read the entire agreement and has reviewed every part of it with the defendant's counsel; (b) that the defendant fully understands this plea agreement; (c) that no promises,

agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; (d) that the defendant is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; (e) that the defendant has entered into this plea agreement freely, voluntarily, and knowingly; and (f) that the defendant's decision to plead guilty in accord with the terms and conditions of this plea agreement is made of the defendant's own free will.

DANIEL N. ROSEN
United States Attorney

Date: 11/10/25

BY:   Garrett S. Fields
      Assistant United States Attorney

Date: 11-10-25

Abraham Victor
Defendant

Date: 11-10-25

Jennifer Rose Congdon
Counsel for Defendant

14